## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| SHEN WEI (USA), INC., and<br>MEDLINE INDUSTRIES, INC.,    ) | |
| ) | |
| Plaintiffs,    ) | **05 C 6003** |
| ) | |
| v.    ) | **Judge Ronald A. Guzmán** |
| ) | |
| ANSELL HEALTHCARE<br>PRODUCTS, INC.,    ) | |
| ) | |
| Defendant.    ) | |

## MEMORANDUM OPINION AND ORDER

Shen Wei (USA), Inc. and Medline Industries, Inc. have sued Ansell Healthcare

Products, Inc. for infringement of U.S. Patent No. 6,953,582 B2 ("the '582 patent"). Pursuant to

Federal Rule of Civil Procedure ("Rule") 56, defendant has moved for summary judgment on the

issue of invalidity under 35 U.S.C. § 102(b). For the reasons set forth below, the Court denies

the motion.


## Background

Plaintiff Shen Wei is a corporation that produces a line of enhanced moisturizing and

therapeutic gloves and the owner of the '582 patent. (Compl. ¶¶ 7, 9.) Plaintiff Medline is the

exclusive distributor of Shen Wei's gloves to healthcare facilities with certain limited

exceptions. (*Id.*)

The '582 patent is a continuation of U.S. Pat. No. 6,630,152 ("the '152 patent"), which is

a continuation-in-part ("CIP") of U.S. Pat. No. 6,423,328 ("the '328 patent"). (Def.'s LR

56.1(a)(3) ¶¶ 8, 10.) The '328 patent is a continuation of U.S. Pat. No. 6,274,154 ("the '154

patent"). (*Id.* ¶ 12.) Both the '328 and '154 patents are titled "Aloe Vera Glove and Manufacturing Method." (*Id.* ¶ 14.) Plaintiffs concede that the '152 patent broadened the claims of the '328 and '154 patents to include skin-soothing substances other than aloe vera. (Pls.' LR 56.1(b)(3)(B) ¶ 54.)

Defendant Ansell is a corporation that produces and sells enhanced gloves under its own and private labels, including Micro-Touch NextStep™ gloves and the Vileda® Soft & Care Disposable gloves. (Compl. ¶ 10.) Plaintiffs contend that Ansell's enhanced gloves infringe the '582 patent. (*Id.* ¶ 11.) Ansell argues that the asserted claims of the '582 patent are invalid under 35 U.S.C. § 102(b) because Shen Wei sold gloves embodying the patent's claims in July 1999, more than one year prior to the patent application's filing date. (Def.'s Mem. Supp. Mot. Summ. J. 7.)

## Discussion

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court resolves all ambiguities and draws all reasonable inferences in favor of the nonmoving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). If the nonmoving party has successfully met its burden, then summary judgment will be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

35 U.S.C. § 102 provides in pertinent part:

[a] person shall be entitled to a patent unless the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.

35 U.S.C. § 102(b) (2000). Thus, where a product embodying a patent is sold more than one year prior to the application date of that patent, the patent-holder loses his right to enforce the claims of his patent. *Id.* Further, the statute acts as an on-sale bar to an invention on file with the U.S. Patent and Trademark Office ("USPTO") and invalidates the patent's claims as anticipated by prior art. 35 U.S.C. § 102(a)-(b); *Hoover Group, Inc. v. Custom Metalcraft, Inc.,* 66 F.3d 299, 302 (Fed. Cir. 1995). Subsequent patent applications filed with the USPTO, such as continuation and CIP patents, may be entitled to the effective filing date of a prior application. 35 U.S.C. § 120 (2000). However, "[f]or a claim in a later-filed application to be entitled to the filing date of an earlier application under 35 U.S.C. § 120 (1994), the earlier application must comply with the written description requirement of 35 U.S.C. § 112, ¶ 1 (1994)." *Tronzo v. Biomet, Inc.,* 156 F.3d 1154, 1158 (Fed. Cir. 1998).

35 U.S.C. § 112, ¶ 1 provides:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor (emphasis added) of carrying out his invention.

35 U.S.C. § 112, ¶ 1. "Determination of whether a priority document contains sufficient disclosure under 35 U.S.C. § 112, first paragraph is a question of law." *See Waldemar Link v. Osteonics Corp.,* 32 F.3d 556, 558 (Fed. Cir. 1994). However, "compliance with the written description aspect of that requirement is a question of fact." *Id.* "The fact finder must determine

3

if one skilled in the art, reading the original specification, would immediately discern the limitation at issue in the patent." *Id.* at 558-59.

To determine whether 35 U.S.C. § 102(b) applies, this Court must first determine whether Shen Wei sold gloves embodying the claims of the '582 patent during the on-sale bar, *i.e.*, the one-year period before the '582 patent application was filed on July 1, 2002. (Pls.' LR 56.1(b)(3)(B) ¶ 7.) In its Statement of Material Undisputed Facts, Ansell asserts that Shen Wei sold such gloves in July 1999. (Def.'s LR 56.1(a) Stmt. ¶ 6.) Plaintiffs deny that assertion, but they do so without citing any evidence in support of their denial. (Pls.' LR 56.1(b)(3)(B) Stmt. ¶ 6.) Thus, they are deemed to have admitted it. *See* N.D. Ill. LR 56.1(b)(3)(B) (stating that party opposing summary judgment must support its denial of the moving party's fact statements with "specific references to the affidavits, parts of the record, [or] other supporting materials" or is deemed to have admitted the facts asserted by the moving party). It is, therefore, undisputed that plaintiffs sold gloves embodying the claims of the '582 patent in July 1999, more than one year before the application for that patent was filed.

Those sales do not, however, necessarily violate section 102(b). If one skilled in the art would read the '154 patent specification to include skin-soothing substances other than aloe vera, then the '582 patent would be entitled to the '154 patent application's April 7, 1999 filing date, saving the July 1999 sales from section 102(b)'s on-sale bar. The question, then, is how would one skilled in the art would interpret the '154 patent specification?

In relevant part, that specification states: "This invention relates generally to hand care products, and specifically relates to applying Aloe Vera on the inner surface of disposable gloves to protect and soothe the hands during and after application of disposable gloves." '154 patent, col. 1, lines 4-7. Claim 1 of the '154 patent claims:

4

1.   A disposable examination glove comprising:

   a) only a single layer of a flexible material forming a cavity to receive a hand; and

   b) a quantity of dehydrated Aloe Vera on an inner surface of the layer of the flexible material, the Aloe Vera contacting the hand during donning of the disposable examination glove,

   wherein the aloe vera is attached to the flexible material by dipping the glove into a solution comprising aloe vera, removing the glove from said solution and subsequently heating the glove to form a layer of dehydrated aloe vera on the surface of the glove.

*Id.*, col. 4, lines 27-38. The only substance the patent explicitly mentions is aloe vera.

A person skilled in the art, however, might read the '154 patent as inherently disclosing the use of substances other then aloe vera. *See Technicon Instruments Corp. v. Coleman Instruments, Inc.*, 255 F. Supp. 630, 640-41 (N.D. Ill. 1966). The inherency doctrine allows "anticipation [to] be inferred despite a missing element in a prior-art reference if the missing element is either necessarily present in or a natural result of the product or process and a person of ordinary skill in the art would know it." *Black's Law Dictionary* (8th ed. 2004). As a result, a patent application may be amended without introducing prohibited new matter, as long as the amendatory matter is inherently disclosed in the application. *Technicon*, 255 F. Supp. at 640-41. Only those skilled in the relevant art are qualified to determine whether the claims of a CIP patent are inherent in its predecessor patent. *Tronzo*, 156 F.3d at 1159; 35 U.S.C. § 112, ¶ 1. The inherency doctrine distinguishes between different types of disclosures, those of: structure, theory, utility and advantage or property. *Cf.* PTO Manual of Patent Examining Procedure ("MPEP") § 608.04(a) (8th ed. 2006).

Structural inherency exists when a person skilled in the art would predict the method or result claimed in the latter patent application after reading the parent application. *See Chubb &*

*Son's Lock & Safe Co. v. Omron Tateisi Elecs. Co.*, 196 U.S.P.Q. 677, 684 (D.D.C. 1976) (giving amended application the benefit of the application date of a prior-filed foreign application because the disclosure of the foreign application "call[ed] for the construction of a mechanical device" that "one skilled in the art would construct . . . contain[ing] no material variation from the limitations" of the claims in the amended application). The Federal Circuit Court of Appeals examined structural inherency recently in *Shu-Hui Chen v. Bouchard*, 347 F.3d 1299 (Fed. Cir. 2003). The plaintiff, Chen, asserted that a chemical claimed in a CIP application was inherently produced from the method disclosed in the parent application. *Id.* at 1305. The court, however, found that the chemical claimed in the CIP was not inherent in the parent application because the method disclosed in that application did not necessarily produce the newly-claimed chemical. *Id.* at 1305-07. In the court's view, Chen's failure to disclose in the parent application any characteristics of the chemical that he claimed was inherently produced by the method claimed in it precluded a finding of structural inherency. *Id.*

In this case, unlike *Bouchard*, plaintiffs' experts, Ms. Chou and Mr. McFadden, testified that anyone skilled in the art who had read the '154 patent in 1999 would predict that a "skin conditioning" and "skin moisturizing" substance could include substances different from, but with the same characteristics as, aloe vera. (Pls.' LR 56.1(b)(3)(B) ¶¶ 47, 48.) Ansell denied Chou and McFadden's assertions, but it did so without providing any support for its denial. (*See* Def.'s Resp. Pl.'s LR 56.1(b)(3)(B) ¶¶ 47, 48.) Thus, it is deemed to have admitted them. *See* N.D. Ill. LR 56.1(b)(3)(A) (stating that "[a]ll material facts set forth in the statement [of additional material facts] filed [by the non-movant] will be deemed admitted unless controverted by the . . . moving party"). Having admitted those assertions, Ansell cannot establish, as a matter of law, that structural inherency does not apply.

6

The second kind of inherency is inherency by theory. "[B]y describing in an application a process which inherently . . . operates according to a theory, a patentee necessarily discloses that . . . theory." *Chemithon Corp. v. Procter & Gamble Co.*, 287 F. Supp. 291, 304 (D. Md. 1968). "But, inherencies cannot be established by probabilities. Rather the evidence must show that the . . . characterization is necessarily and inevitably inherent in the practice of the invention." *Id.* Obviously, if a theory is first introduced in an amended specification, then inherency is an impossibility. *Steward v. Am. Lava Co.*, 215 U.S. 166, 168 (1909).

In the instant case, according to the declarations and deposition testimony of plaintiffs' experts, the theory of having a substance applied to the inside surface of a glove to soothe the skin was introduced in the '154 patent application. (Pls.' LR 56.1(b)(3)(B) ¶ 51 (stating that experts testified that "it would naturally occur to those skilled in the art that substances other than aloe vera could be used to satisfy the objectives, properties and function outlined in the '154 patent application").)  Ansell argues that Chou and McFadden's declarations are conclusory but does not explain why they are not persons skilled in the art or explain why their opinions should be entirely discounted. Therefore, Ansell has failed to meet its burden of establishing that there is no triable issue regarding inherency of theory.

The third kind of inherency, inherency of utility, exists when the new invention or process may be used as predicted by one skilled in the art but the original application does not specify such a use. *See Ex parte Ayers*, 108 U.S.P.Q. at 444. Because the CIP patent in this case broadens the scope of the prior patent, but does not add a new use for the invention, inherency of utility does not apply.

The last kind of inherency, inherency of advantages and properties, exists when newly discovered advantages predictably flow from the claimed subject matter. *See Technicon,* 255 F.

7

Supp. at 640-41. "There is no requirement that superiority over prior art be disclosed in the application; it is enough if the basic property or utility in which the advantage resides is disclosed." *In re Slocumbe,* 510 F.2d 1398, 1403 (C.C.P.A. 1975).

In *In re Slocumbe*, the former U.S. Court of Customs and Patent Appeals found the newly-claimed invention valid, even though an unexpected property resulted from polymers prepared according to the inventor's claims. *Id.* at 1403-04. Similarly, the Third Circuit in *Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc.*, 630 F.2d 120, 134 (3d Cir. 1980), stated: "Inasmuch as a chemical compound and its properties 'are one and the same thing,' newly discovered poperties [sic] of the compound not disclosed in the original specification or abstract may be added by amendment without being treated as 'new matter' . . . ."

In *O'Hara Manufacturing Ltd. v. Eli Lilly & Co.,* 231 USPQ 753 (N.D. Ill. 1986), the plaintiff challenged the validity of two of Eli Lilly's patents on a tablet coating machine. The *O'Hara* court examined three different advantages of the invention that were at issue and found them all to be inherent in the parent patent's specification. *Id.* at 756-57. However, the court denied summary judgment regarding the issue of validity because plaintiff failed to show the absence of a genuine issue of material fact as to whether the parent application inherently disclosed the advantages of the amended application. *Id.* at 757.

The present case is analogous to *O'Hara* in that the CIP patent adds language that is consistent with the inherency of advantage doctrine because the aloe vera is used for its advantages and "skin-soothing" properties to create an enhanced glove. (Pls.' LR 56.1(b)(3)(B) ¶ 51.) However, as exhibited in the cases examined above, the applicability of the inherency doctrine hinges upon the opinions of persons skilled in the art. Thus, if those who are skilled in the art would interpret aloe vera as representative of a genus of "skin-soothing" substances, as

Chou and McFadden assert, then the claims of the '154 patent would naturally be interpreted to include "skin-soothing" substances other than aloe vera. (*See id.* ¶¶ 47-48.) Ansell has failed to dispute properly the assertions of plaintiffs' experts. (*See* Def.'s Resp. Pl.'s LR 56.1(b)(3)(B) ¶¶ 47, 48.) Thus, it would be improper to grant Ansell's motion for summary judgment based on the record before the Court. Plaintiffs, who have not cross-moved for summary judgment, have successfully raised a genuine issue of material fact for trial as to whether one skilled in the art would interpret aloe vera to include other "skin-soothing" substances when reading the '154 patent. Therefore, the Court denies Ansell's motion for summary judgment.

## Conclusion

For the foregoing reasons, the Court denies Ansell's motion for summary judgment [doc. no. 68].

**SO ORDERED.**                                   **ENTERED:**   9/28/07

**HON. RONALD A. GUZMAN**
**United States District Judge**